Good morning, may it please the court. My name is Victoria Chagin and I represent Clifford Porter in the Social Security Disability Appeal. I'd like to reserve two minutes for rebuttal, please. Counsel, you will have to monitor that yourself. I will. Okay. I'd like to address the two primary reasons why the administrative law judge in this case rejected the application for disability benefits. The first issue regards the back impairment. The administrative law judge found that Mr. Porter didn't have a severe back impairment. Now, severe is a term of art for Social Security purposes. A severe impairment is one that has more than a minimal effect on an individual's ability to perform basic work activities. It's a de minimis test. It's been referred to as a threshold finding. Now, because the administrative law judge found that Mr. Porter didn't have a severe back impairment in this case, he found that he had absolutely no exertional limitations. This was very significant because if Mr. Porter has sedentary or light limitations, he would have to be found automatically disabled by Social Security regulations. Those are the medical vocational guidelines. Now, there was evidence in this case that Mr. Porter was limited to less than sedentary work, and that came from the physician assistant, Kara Vader, in January 2006. She found that Mr. Porter had osteoarthritis of the lumbar spine, which limited him to sedentary work. Now, the administrative law judge used somewhat circular reasoning to reject the opinion of Ms. Vader. He found first that Ms. Vader's opinion wasn't based on any objective medical evidence, but then he rejected the X-rays that supported Ms. Vader's opinion and said that those weren't corroborated by any clinical findings, so it went around and around. Instead, he relied on another examining physician's opinion, and that was Dr. Lee, and that was rendered prior to Ms. Vader's opinion and, most importantly, prior to the X-rays. Now, on the issue of the mental impairment, the administrative law judge did find that Mr. Porter What did physician's assistant, Vader, think that the X-rays showed? She had, based on her examination of Mr. Porter, suspected that he had osteoarthritis. Then she ordered X-rays that corroborated this diagnosis. Did anybody else look at those X-rays? Well, the physician who interpreted them. And that would have been? I have the citation to the record. I don't have the doctor's name. Let's see. The X-rays are found at page 218, and they showed advanced changes of the L5 to S1 spine. We had a number of doctors that were willing to repeat that Mr. Porter had some kind of back impairment, but we don't know who the other doctor was. Did this doctor agree with Ms. Vader? Part of the problem is that Ms. Vader is not an acceptable medical source entitled to some weight, but not to the same weight as the doctors, and she seems to be the only one who's really weighed in heavily to say he's disabled, and we don't get anybody else who can corroborate that. So if somebody else looked at those X-rays, that might be critical to your case. Well, the doctor who interpreted them wouldn't be offering an opinion. Radiologists don't typically offer opinions on functional limitations. So what happened here is very much what happens, what the Social Security Administration has described in Social Security Ruling 06-3P. Because of the way the medical system is run, very often patients don't see a physician. They see a physician's assistant. So the physician's assistant is entitled to provide information about the severity of an impairment. In this case, the impairment was established by the X-ray that was interpreted by a medical doctor, an acceptable medical source. Then she provided information, and that's what we're relying upon here, as to the severity of the impairment. That's all acceptable under Social Security rulings and regulations. We're not using Ms. Vader. We're not alleging that Ms. Vader was allowed to diagnose the condition. We're saying that she was allowed to provide an opinion as to the severity. As for the other medical sources, there weren't any other examining medical sources who saw objective medical evidence in this case. I'd like to go on to the mental impairment, if that's all right. The administrative law judge found severe mental impairments, a dysphagmic disorder, an anxiety disorder, and a personality disorder. And he did impose some limitations to simple and some detailed work with no public involvement. But we submit that he missed Mr. Porter's most significant impairments, and those were his difficulty handling stress, unexpected developments and changes in routine, leading to anger outbursts and loss of control, as well as his difficulty interacting with others. Now, there were three sources of information that we looked at in order to support these allegations, and there was the lay testimony, Mr. Porter's own testimony, and the medical evidence. And I'd like to skip to the medical evidence. The medical evidence, the most compelling piece of evidence was from a Dr. Knapp, whom I think I mistakenly referred to as a he when it's in fact a she. This was a four-time examining doctor who diagnosed major depressive disorder, recurrent severe, generalized anxiety disorder, and histrionic personality disorder, establishing marked limitations, inability to exercise judgment and make decisions, respond appropriately to and tolerate work pressures, and in addition to that, some moderate limitations. Now, ultimately, Dr. Knapp found that Mr. Porter could not perform any work, and this is very consistent with Social Security's regulations. Listing 12.00, it could be 12.04 or 12.06, relating to mental impairments, indicates that if someone has marked limitations in two of the four functional areas, that they are automatically disabled. Once again, it's an automatic finding, and Mr. Porter meets that in this case. Administrative law judge relied upon an examining physician, Dr. Uldahl, and Dr. Brown, a non-examining state agency doctor. Now, Dr. Uldahl's report was an older report. Dr. Uldahl was less familiar with Mr. Porter and didn't address, and this is the most important problem, didn't address the stress limitations at all. So we submit that there should have been an automatic finding of disability in this case, either because he met the listings or because he satisfied the guidelines, and if not, we think at the very least this case should have gone before a vocational expert to offer an opinion about the limitations, the non-exertional limitations in this case. So this case should be remanded either for a payment of benefits or at the very least for another administrative hearing. Thank you. Thank you, Counsel. Good morning, Your Honors, Counsel. Richard Rodriguez with the Commissioner of the Social Security Administration. This case is hinging on whether or not Mr. Porter's back impairment can be considered severe. In order to be severe, you have to have evidence from an acceptable medical source that sets out limitations that significantly limit his ability to perform basic work activities. The only acceptable medical source in this record that provided that type of assessment was Dr. Lee, whose report can be found at transcript site 206. Dr. Lee, after performing a full examination of Mr. Porter, concluded that despite his complaints of back pain, he had no limitations in functioning. He had no limitations in walking, no limitations in lifting, carrying, standing, or sitting. Manipulative limitations were nonexistent. Yes, it's true Dr. Porter didn't have the benefit of an x-ray, but likewise, neither did Ms. Vader. The x-ray that Counsel refers to was taken four or five days after she had rendered her opinion that Mr. Vader could only perform less than sedentary work. Therefore, she's asking this Court to accept her opinion over an acceptable medical source's opinion in determining whether or not this back impairment was severe. And we think that the regulations are quite clear that that's something that cannot be done. In regard to the mental impairments, stress is not an impairment in and of itself. It's a symptom of his mental impairments, and the Commissioner believes that it was adequately accounted for in the RSC that the ALJ formulated. Relying on Dr. Knapp's opinion, the ALJ, or discounting Dr. Knapp's opinion rather, the ALJ referred to Dr. Udall, who performed an examination. Dr. Knapp is not a treating physician. Dr. Knapp is another examining physician. But Dr. Udall's assessment was that Mr. Porter could perform simple, repetitive work and even some complex tasks. And that's actually fairly consistent with Mr. Porter's activities of daily living, in that he was able to proceed in these hobbies that required high amounts of concentration, that he was able to go out and attend church functions, go to square dancing, go to baseball games. All of these things that Mr. Porter did actually are contrary to the findings of Dr. Knapp, and the ALJ noted that, and that's an appropriate reason for rejecting that opinion. What about his capacity to relate to other people? It seems that he had a great deal of difficulty actually with that. Even though he might go out and square dance and do these other things. Well, I believe that was accounted for in the- Could he function in a work environment, I guess is the issue. Absolutely. The RSC accounted for his problems with dealing with people by limiting him to no work with the public and to unskilled work. And unskilled work in and of itself usually pertains to dealing with objects rather than people. Therefore, Mr. Porter should have been able to perform the job, any unskilled job that was accounted for in the medical vocational guidelines. I think the record suggests that Mr. Porter had one job for 16 years. I'm not sure I know what that job was. He was a pizza delivery driver for 16 years, Your Honor, and he was able to do that. A pizza delivery driver. And one of the other reasons why, that's a reason that ALJ used to discount his credibility concerning his allegations about being able to deal with the public and with other people. That including his activities of daily living. The fact that he had worked with these impairments, these alleged impairments, for that long period of time and in fact even worked after his alleged onset date in similar positions. No vocational expert was called in this case. Should that be part of what happened here? If Mr. Porter's non-exertional limitation had significantly eroded the occupational base, then yes, we should have called the VE. But in this case, the ALJ did a thorough analysis and found that the limitations resulting from the non-exertional impairments did not significantly erode the unskilled occupational base. And that is consistent with this Court's finding in the Hupai case, where upon reading it you see that the non-exertional limitations were even greater than the ones assessed by the ALJ in this case. Yet the Court in Hupai found that it wasn't necessary to call the VE in order to determine whether or not there was other work that this person could do. The Court has no further questions. Thank you. Going back to the severe back impairment, there was additional evidence of a back impairment that was before the administrative law judge. There was the plaintiff's own testimony that he couldn't bend his back, lift, twist, kneel, crawl. There was a health form that he completed indicating that he had a compressed L5 lumbar vertebrae. Back in 2000, his treating physician, Dr. Gould, indicated that he had significant disc bulges. And there was also an X-ray, which was not signed, but an X-ray from February 2002 indicating that he had osteoarthritis in his. Oh, is that the one that the physician's assistant, Vader, looked at? No, it's an additional X-ray. Okay. It was before Dr. Vader. The government said, the commissioner said that the X-ray that physician's assistant, Dr. Vader, had taken was taken four days after she filled out the report. Absolutely. It was taken after. What she did is she offered a diagnosis, and then she, which is routine, ordered testing to see if that diagnosis was sound. Do we know whether she even looked at the X-ray? We don't know if she looked at the X-ray. We know that a medical doctor, an acceptable medical source, diagnosed osteoarthritis, degenerative disc disease, that was advanced in nature on the basis of that X-ray. I'd also like to speak to the 16 years of work as a pizza delivery man. Mr. Porter is an alleged disability dating back to 16 years. He's saying that he has a history of back pain and of mental impairments. However, he has worked, he has tried to work for many years, and he has been fired many times. He has been forced out of other jobs. The pizza delivery job is the one that he could hold on to the longest. It is not in keeping with his IQ. He's a very intelligent person. He had a lot of difficulty dealing with people. This allowed him a bit of an anonymity. When his back impairment combined with his increased symptoms of anxiety and depression got to a point where he couldn't work, that's why he left that job. Thank you, Counsel. Thank you. Thank you, Counsel, for the argument. Porter v. Astro is submitted.
judges: Fletcher B. , Fernandez, Bybee